# UNITED STATES DISTRICT COURT

# DISTRICT OF NEW MEXICO

**MARTIN S. FRIEDLANDER**, **Individually**,

      Petitioner,

v.                                                                    **No. 07-CV-1046 MV/RHS**


**UNITED STATES BANKRUPTCY COURT
for the DISTRICT of NEW MEXICO;
the UNITED STATES DISTRICT COURT
for the DISTRICT of NEW MEXICO;
the UNITED STATES TRUSTEE
for the DISTRICT of NEW MEXICO;
YVETTE GONZALES, in Her Official Capacity as
Case Trustee in the Case of In re: JEFFERY W. POTTER, Debtor
Bankruptcy Case No. 7-05-14071 m**

      Respondents.

## <u>AMENDED MEMORANDUM OPINION AND ORDER</u><br><u>DISMISSING PETITION</u>

THIS MATTER comes before the Court on Petitioner Martin S. Friedlander's  First

Amended Verified Petition for a Writ of Mandamus, filed October 27, 2007 (Doc. 3), and on

Respondent Yvette Gonzales' Motion to Dismiss or for summary judgment, filed February 5, 2008

(Doc. 8).  Because Friedlander references the bankruptcy proceedings of Jeffrey W. Potter in his

petition, bases his right to mandamus relief on these proceedings by contending that Potter and his

bankruptcy attorneys committed perjury and fraud by filing the bankruptcy schedules, and asks the

Court both to stay and to dismiss those proceedings, the Court has taken judicial notice of Potter's

bankruptcy proceedings, including the adversary proceedings and other cases involving the same

parties filed in this District.  *See Ginsberg v. Thomas*, 170 F.2d 1, 3 (10th Cir. 1948) ("It is. . . well

settled that a court takes judicial notice of its own records."); *Mansell v. Carroll*, 379 F.2d 682, 683

(10th Cir. 1967) (holding that "[t]he trial court properly took judicial notice of another civil suit concluded in that court, wherein this same trustee in bankruptcy sought to recover for creditors the property [of the bankruptcy estate]").  Friedlander also demands that both this court and its bankruptcy unit admit him to the New Mexico federal bar and to practice before the bankruptcy court, which are the subjects of motions that have been repeatedly denied and are rulings from which Friedlander has not appealed, and he challenges the constitutionality of our local rules regarding the *pro hac vice* admission of out-of-state lawyers.  The Court's review of Friedlander's petition, of Gonzales' motion and Friedlander's response, and of the proceedings in this Court and in its bankruptcy unit reveals that Friedlander's petition is one in a series of attempts Friedlander has made in this District and in other federal districts to delay and interfere with Potter's bankruptcy proceedings and with the timely recovery of assets in the Bankruptcy Court and to obtain rulings that are contrary to previously-issued orders.  Because Friedlander has utterly failed to establish the prerequisites for mandamus relief, the Court will dismiss the petition for lack of jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

Friedlander, a California attorney who is not licensed to practice law in New Mexico and who has been denied *pro hac vice* status to practice in this Court and its bankruptcy unit, is the successor Trustee of an irrevocable Trust that he created in August, 2003 for Potter eleven days after Potter had lost in one of several state-court suits.  Potter placed all of his assets and all of the assets of his wholly-owned limited liability corporations ("LLCs") into the Trust and made himself and unnamed attorneys representing Potter in the various lawsuits in New Mexico state courts the beneficiaries of the Trust.  Friedlander has always asserted that he is one of the attorney beneficiaries of the Trust, having co-represented Potter in the state-court suits.

In April 2005, Potter, represented by independent New Mexico counsel Chris Pierce, filed

for bankruptcy under Chapter 11 in New Mexico, causing all of the pending state-court cases to be stayed pursuant to the automatic stay. *See In re Potter*, 05-14071 M (Bankr. D.N.M.). But because all of his assets were in the Trust, Potter was compelled to list the Trust as an asset of his bankruptcy estate so that the assets could be used to successfully reorganize Potter's debts and pay off his and his LLC's creditors. Potter removed pending state-court proceedings involving him and his LLCs to bankruptcy court. *See Potter v. Engel*, 05-ap-1129-m (Bankr. D.N.M.); *Valley Nat'l Bank v. Potter*, 05-ap-1216-m (Bankr. D.N.M); *Cook v. El Llano Summit Caja Del Rio, LLC*, 05-ap-1218-m (Bankr. D.N.M.). In his objections to some creditors and other state-defendants' motions to lift the stay as to the pending state-court proceedings, Potter contended that

> [t]he Debtor is the settlor and beneficiary of "The Legal Defense and Maintenance Trust of California Dated 8/25/03, Mariana Danilovic, Trustee" (the "Trust"). [] The Debtor has at the very least a beneficial interest in the Trust, and in the assets of the Trust, and the automatic stay applies to the Trust and the assets of the Trust. [] Further, to the extent necessary and appropriate, the Debtor intends to dissolve the Trust, or to file an adversary proceeding to avoid the transfers into the Trust as fraudulent transfers, to the extent such transfers were made. The Debtor believes that the automatic stay should remain in effect during this process.

05-14071 M, Doc. 22 at 1.

Accordingly, on July 11, 2005, Potter, through his bankruptcy counsel, initiated an adversary proceeding against Danilovic, seeking to avoid the transfer of all of his assets to the Trust so that they could be recovered into the bankruptcy estate. *See Potter v. Danilovic*, 05-ap-1151-m (Bankr. D.N.M), Doc. 1. Potter alleged that, before filing the bankruptcy petition, he fraudulently transferred all of his assets to the Trust and asserted that he could avoid those transfers as the Debtor-in-Possession under 18 U.S.C. § 544, exercising rights as a hypothetical creditor to set aside fraudulent transfers under state law. *See id.*

Friedlander entered a "special appearance" as a creditor in Potter's bankruptcy case in

September 2005, alleging that he was one of Potter's "20 largest creditors."  05-14071 M, Doc. 50

at 2.  Between December 2005 and January 2006, Friedlander moved to intervene in all of the

removed adversarial cases.  He contended that he had an interest in the subject matter of the

proceedings because Potter and the Trust owed him money for his services in state court, and that

his interest would not be adequately protected by existing parties.  He also claimed he had a right

to intervene as Potter's legal representative in the state-court proceedings.  Before Judge Mark B.

McFeeley,  the presiding judge in the Potter bankruptcy cases, ruled on his motions, Friedlander

filed motions to recuse Judge McFeeley.  Judge McFeeley denied the motions to recuse, then denied

the motions to intervene, holding that Friedlander's claim was based upon his attorney's lien and

not upon any independent right to recover in the state-court actions; that Friedlander claimed no

ownership interest in Potter's LLCs that had interests in the removed proceedings; that Friedlander's

attorney-lien interest was not threatened or even affected by the claims in the adversary proceedings

because Friedlander could share in the proceeds generated by them; and that the Debtor-In-

Possession had to file an application to hire counsel in adversarial proceedings and Potter had not

filed an application to hire Friedlander.  *See* 05-ap-1129-m Order filed Feb. 28, 2006 (Doc. 29); 05-

ap-1216-m Order filed March 14, 2006 (Doc. 33); 05-ap-1218-m Order filed March 1, 2008 (Doc.

24).  Friedlander appealed from all of the rulings and moved for stays pending appeal.

On January 6, 2006, Potter filed his Disclosure Statements regarding his reorganization plan

in the Bankruptcy Court.  *See* 05-14071 M, Doc. 103.  Potter acknowledged that the state-court suits

had been filed either against him and his corporations or by him and his corporations before the

bankruptcy proceedings were initiated and stated:

> The Debtor's plan is to continue with the litigation and pursue recoveries against
> Robert A. Engel and Engel & Stern, LLP; Valley National Bank; and Richard Cook
> and El Llano Company, Inc., through the Bregman Law Firm, which has been

> approved by the Bankruptcy Court as special counsel for the Debtor.  Any recoveries
> from these suits will be used to pay the creditors.  In addition, the Debtor intends to
> utilize his share (or Summit Investment Co. LLC's share) of funds held in the Court
> registry, and his share, through his LLC's, of the value of the property owned by El
> Llano Summit Caja Del Rio, LLC to pay his creditors.  To the extent necessary, the
> Debtor will also utilize his personal income to pay his creditors.  The Debtor believes
> that he will be able to pay legitimate allowed claimants 100% of their claims.

*Id.* Doc. 103 at 4.  In order to achieve his goals, and in light of the fact that all of his assets were still

in the Trust, Potter stated:

> The parties are actively conducting negotiations to accomplish the transfer of the
> assets from the Trust to the original settlors, and to release Mariana Danilovic from
> any liability or claims due to her actions as Trustee, and from any further
> involvement in the Debtor's financial and legal affairs.  The Debtor has also removed
> cases to bankruptcy court as set forth above, and is currently dealing with motions
> to remand, also as set forth above.

*Id.* at 9.  But the transfer of the assets from the Trust back to Potter and his LLCs never happened.

Despite Potter's representation by a bankruptcy attorney and by special counsel in the state-

court proceedings and Potter's disclosure statements,  Friedlander again moved to intervene in the

bankruptcy action as an attorney for Potter, to "oppose the Bank of America's Motion to be relieved

of the Automatic Stay."  *Id.* Doc. 105 at 23.

In his order denying the motion, Judge McFeeley noted that Friedlander argued

> that he and Potter have many causes of action against the Bank which could yield a
> damage award exceeding the amount of the Bank's debt, and that the offset would
> extinguish the Bank's claim against Potter.  Friedlander asserts that Potter is affected
> by the Bank's tortious actions and breaches of contract; therefore, Potter is entitled
> to a preliminary injunction prohibiting the Bank from proceeding to foreclose its
> lien.  Friedlander claims that his interests in this matter are identical to Potter's
> interests in opposing the Stay Motion and preventing foreclosure.  Friedlander asserts
> that Potter will be unrepresented by counsel because his current special counsel,
> Samuel Bregman, has moved to withdraw.  Potter is represented by bankruptcy
> counsel, Davis & Pierce, P.C. (Chris W. Pierce).  Friedlander argues that he can
> better represent both his and Potter's interests in the stay proceeding.

*Id.* Order at 2-3, filed February 16, 2006 (Doc. 131).  Judge McFeeley denied Friedlander's motion

to intervene, holding:

> Friedlander, as a creditor, holds an interest adverse to the estate; it necessarily follows that he is not a disinterested party.  Therefore, he cannot be retained to represent Potter.  Intervention by a creditor, who is already a party to the bankruptcy proceeding, to act on behalf of the debtor is not permitted by the Code.  Moreover, even if Friedlander has a lien on the property that is subject to the Stay Motion, his interest in the property can be adequately protected by his appearance in the [state-court] foreclosure proceeding.

*Id*. at 3.

Although Friedlander was the Trust's attorney at the time Potter filed the adversary proceeding against Danilovic and despite Judge McFeeley's three earlier orders denying intervention, Friedlander again sought to intervene as a creditor and as a beneficiary of the Trust in the adversary suit against the Trustee of Potter's Trust nine months after Potter filed the adversary proceeding.  *See* 05-ap-1151-m, Doc. 6.  Friedlander included within the motion to intervene a motion to dismiss the adversary proceeding.  *See id.*  The basis of his motion to dismiss was his contention that the Bankruptcy Court had no subject-matter jurisdiction over Potter's two LLCs that had been transferred to the Trust because those LLCs were separate legal entities and, therefore, were not properties of Potter's bankruptcy estate.  *See id.* at 1-3.  Potter, through his bankruptcy counsel, filed an amended complaint against Danilovic on March 14, 2006, *see id.* Doc. 7, and Friedlander again moved to intervene and to dismiss the amended complaint, *see id.* Doc. 9.  Potter objected to Friedlander's intervention and disputed his allegations.  *See id.* Doc. 10.  At that point Friedlander advised Potter to go against his bankruptcy counsel's advice, and Friedlander filed a reply contending that "Potter has 'approved' Friedlander's secured claim in the amount of $236,000 plus, which lien is superior to that of LANB.  The court is requested to take judicial notice of Potter's approved of Claim No. 15, which Friedlander submitted for filing on Friday, March 24, 2006." *See id.* Doc. 12 at 2.

6

The multipaged document entitled "Approval to Proof of Claim," details Potter's allegations against most of the other creditors and defendants in the pre-petition state-court and adversarial proceedings and states that Friedlander was entitled to the full amount of his creditor claim. Pierce, Potter's bankruptcy counsel, moved to strike the document and for sanctions against Friedlander, stating Pierce "had no knowledge that the Approval to Proof of Claim had been submitted to Debtor for his signature, and had no knowledge of any of the facts relating to the negotiation, preparation, signature or filing of the Approval to Proof of Claim." No. 05-14071 MS, Doc. 158 at 3. Pierce contended that "Friedlander's unauthorized and willful contacts with the Debtor concerning the negotiation, preparation, signature and filing of the Approval to Proof of Claim constitute a willful violation of the Automatic Stay pursuant to 11 U.S.C. §362(h)" and he moved to strike the Approval. *See id.* Soon thereafter, Pierce moved to withdraw as Potter's counsel. *See id.* Doc. 159.

In his response to the motion to strike the Approval to Proof of Claim, Friedlander contended that he was Potter's attorney "in all capacities except as Debtor" and stated, "I will not be seeking compensation out of this bankruptcy estate for representations. My compensation will be paid by the TRUST." *Id.* Doc. 176 at 1 (capitalization in original). Despite that statement, however, Friedlander continued his involvement in the Potter bankruptcy as a creditor of the estate.

In the Danilovic adversary proceeding to set aside the transfer of Potter's assets to the Trust, Judge McFeeley denied Friedlander's motion to intervene for lack of standing because Friedlander had never produced a copy of the Trust to show that Friedlander was, in fact, a beneficiary of the Trust and because he had not shown that the "Trustee of the Trust would not adequately represent his interests in this [adversary] proceeding." 05-ap-1151-m, Order filed April 15, 2006 at 2 (Doc. 15). Judge McFeeley stated that, even if Friedlander did have standing, the court would deny the motion to dismiss the adversary proceeding against Danilovic. Judge McFeeley addressed all of

7

Friedlander's legal arguments and held that the "Trust property is the subject of this avoidance action, which, if successful, will recover the Trust property into the bankruptcy estate. Moreover, this Court has jurisdiction over the Debtor's interest in the property held in the Trust and over any interest that the Debtor owns in the Summit [LLC] entities." *Id.* at 4. Friedlander appealed from the ruling and moved for a stay pending appeal, which Judge McFeeley denied. *See id.* Docs. 16, 18, and 19. To get things moving in the adversary proceeding on the issue of fraudulent transfer, Judge McFeeley held a scheduling conference and issued a pre-trial order. *See id.* Order filed May 3, 2006 (Doc. 25).

Friedlander then filed a document on Potter's behalf entitled: "Motion by Debtor Jeffery Watson Potter To Withdraw Two Motions Against Mr. Friedlander Deceitfully filed by Chris Pierce on My Behalf Without My Consent or Authority" on May 5, 2006. *See* 05-14071 M  Doc. 181. There, Potter claimed dissatisfaction with Pierce's representation, claimed that Pierce had an unidentified conflict of interest, and contended that Pierce had told him his legal problems were all caused by Friedlander and that Pierce had lied to him. *See id.* at 2-3.

On May 18, 2006, Judge McFeeley struck the Proof of Acceptance of Friedlander's Claim that Friedlander had filed. *See id.* Doc. 186. That same day, Judge McFeeley granted Pierce's motion to withdraw as Potter's attorney in the adversary proceeding. Four days later, Potter, allegedly proceeding pro se, filed a Notice of Voluntary Dismissal With Prejudice of the adversary proceeding against Danilovic. *See* 05-ap-1151-m, Doc. 28. Friedlander admits that he "prepared the Dismissal with prejudice." 07-ap-1062-m, Doc. 93 at 25. Judge McFeeley granted Pierce's motion to withdraw as bankruptcy counsel in the main case on May 22, 2006. *See* 05-14071, Doc. 190. In light of Pierce's withdrawal as counsel, and Potter's claims that Pierce had forged Potter's signature on an amended disclosure statement filed on May 5, 2006, Judge McFeeley issued an order

stating that he would not set an objection deadline to the amended reorganization plan unless Potter ratified the amended plan and disclosure statement within ten days. *See* 05-14071 M, Order filed May 23, 2006 (Doc. 191). Potter did not file such a ratification and never submitted a new plan or disclosure statement.

Valley National Bank, one of the creditors that also had begun litigation against Potter and his LLCs in state court before the bankruptcy proceedings were initiated, then moved to either appoint a chapter 11 Trustee or to convert Potter's bankruptcy to one under chapter 7, citing, in part, the difficulties and delays caused by Friedlander's involvement in the case and Potter's failure to make progress in recovering his assets from the Trust. *See id.* Doc. 197. Friedlander objected, contending that he was now the Trustee of the California Trust, which gave him standing to pursue all litigation, and he blamed the lack of progress on the alleged incompetence of all of Potter's former attorneys. *See id.* Doc. 202. The United States Trustee also moved for conversion to chapter 7, also citing Friedlander's involvement and conflicting interests, Friedlander's ghost-writing of Potter's allegedly pro-se filings, and Potter's failure to ratify the proposed re-organization plan. *See id.* Doc. 203.

Judge McFeeley held a hearing on the motions in October 2006. At that hearing Potter, appearing pro se, and Friedlander requested that the bankruptcy proceeding be dismissed, but the remaining creditors urged the Court to convert the proceeding to a Chapter 7 liquidation. *See id.* Order at 2, filed November 17, 2006 (Doc. 228). Judge McFeeley noted that Potter had failed to submit a reorganization plan or disclosure statement that had been confirmed; that he had dismissed the adversary proceeding brought to set aside the transfer of his assets to the Trust; that he had failed to obtain substitute counsel; and that he failed to meet his obligations as debtor-in-possession. *See id.* at 3-4. Judge McFeeley noted that "Friedlander contends that the Debtor's voluntary dismissal

of the Adversary Proceeding No. 05-1151 M with prejudice pursuant to Rule 41(a), Fed.R.Civ.P.

would be binding on any subsequent trustee appointed to administer the Debtor's bankruptcy estate,

rendering conversion of the Debtor's bankruptcy proceeding of no benefit to creditors or the

bankruptcy estate." *Id.* at 5.  Judge McFeeley held, however, that because Potter, when he was the

"debtor-in-possession, entered into a Settlement and Release Agreement with Ms. Danilovic, and

others, whereby he agreed to release and indemnify Ms. Danilovic in exchange for Ms. Danilovic's

resignation as trustee of the California Trust," the agreement constituted "a settlement and

compromise of Adversary Proceeding No. 05-1151 M, and as such, is subject to notice and

approval" by the Bankruptcy Court.  *Id.* at 6.  Because no such approval had been sought or given,

Judge McFeeley held that the "consequent voluntary dismissal of the adversary proceeding cannot

be binding upon all creditors." *Id.* at 7.  Judge McFeeley also noted that several adversary and state-

court proceedings involving Potter and his LLCs could possibly benefit the estate and that it was

more equitable to creditors to convert the bankruptcy proceedings rather than to dismiss them.  *See*

*id.* at 7-9.  Judge McFeeley converted Potter's Chapter 11 reorganization proceeding to a Chapter

7 liquidation proceeding on November 17, 2006.  Respondent Gonzales was later appointed as the

Chapter 7 Trustee in Potter's bankruptcy case.

Friedlander filed a motion to reconsider, again attacking the former attorneys, the U.S.

Trustee, and Judge McFeeley and contending that, as Potter's largest, and "only honest" creditor,

Judge McFeeley should have weighed his interests more heavily than the other creditors.  *See id.*

Doc. 231.  Judge McFeeley denied Friedlander's motion, and Friedlander filed a notice of appeal

and a motion for stay pending appeal (stating that they were filed both on his behalf and on Potter's

behalf), which Judge McFeeley also denied.  *See id.* Docs. 234, 239, 241, 248.

The Bankruptcy Court record reflects that, during the next few months, Friedlander objected

to the appointment of the Chapter 7 Trustee and to the firms she attempted to hire to represent the estate, filed an "emergency" "Motion to Terminate all further examinations of the debtor and to remove the [Chapter 7] Trustee for cause," filed new lawsuits in California in state and federal courts against the Defendants in the adversary and state-court proceedings, and served several sets of interrogatories and requests for production and requests for admissions on the law firms the Chapter 7 Trustee sought to hire, the Trustee herself, and the other creditors or Defendants. He filed dozens of motions in the adversarial proceedings. During this time, six additional adversarial proceedings were filed by the various parties and the Chapter 7 Trustee, and Friedlander tried to become involved in all of them.

On October 23, 2006, despite the existence of the automatic stay, Friedlander filed suit against Mountain States Indemnity Company in this Court, alleging a breach of an insurance contract owned and executed by Potter and his LLCs. *See Friedlander v. Mountain States Indemnity Co.*, 06cv1026 JAP/LFG (D.N.M.), Doc. 1. The initial basis of his alleged standing to bring the suit was that Potter's and his LLC's rights had been assigned to the Trust, and he was now the successor Trustee. Because "Friedlander is not an attorney authorized to practice before the United States District Court in New Mexico" or in the state courts of New Mexico; because pro se litigants may not represent anyone but themselves, including trusts, and because "trusts are business entities coming within the scope of D.N.M.LR-Civ. 83.7, and cannot pursue litigation in this forum unless represented by licensed counsel" Chief Magistrate Judge Lorenzo Garcia issued an order directing Friedlander "to have a licensed New Mexico attorney, authorized to litigate in the United States District Court for the District of New Mexico, enter an appearance on behalf of Friedlander and the Trust within twenty days." *Id.* Order filed October 26, 2006 (Doc. 2). Unhappy with that order, Friedlander decided to take a different tack.

11

Ignoring Judge McFeeley's ruling that Potter (and, therefore his bankruptcy estate) held at least a beneficial interest in the assets of the Trust and the LLCs and that the bankruptcy court had jurisdiction over those assets, and apparently in violation of the automatic stay, *see* 11 U.S.C. § 362 (providing that a bankruptcy petition filed under chapters 7 or 11 "operates as a stay, applicable to all entities, of--. . . (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate"), Friedlander and Potter signed a "Notice of Assignment by Trustee, Successor Trustee of the Legal Defense Trust of California to Martin S. Friedlander, individually and Substitution of Martin S. Friedlander individually as Attorney Pro se and Pro Hac Vice for Martin S. Friedlander, individually" on November 6, 2006.  On November 9, 2006, Friedlander filed a pleading captioned "First Amended Complaint for Breach of Insurance Contract; Bad Faith, Prima Facie Tort; and Unfair Trade Practices. (Rule 15a of the FRCP)" in the same case, asserting the right to proceed pro se as the assignee of the Trust assets.  *See* 06-cv-1026 JAP/LFG, Doc. 3.  The defendants moved to stay the district-court proceedings because of the bankruptcy court's automatic stay and because the issue whether the transfer of Potter's and his LLC's assets to the Trust was fraudulent was at issue in those proceedings.  *See id.*, Doc. 6.  In an order to show cause why the complaint should not be dismissed, Judge Garcia noted that,

> [t]his pleading, as the prior one filed by Friedlander, is again filed in a *pro se* capacity without the benefit of local counsel in violation of the Court's specific directive and the district's local rule.
>
> The first several pages of Friedlander's pleading contain a rambling argument as to why the Court's earlier order was erroneous.  Instead of complying with the Court's order, Friedlander contends that, "Friedlander, as Trustee, assigned, in writing, all of the claims herein to himself as an individual, so that he may appear pro se."  []
>
> Friedlander fails to note, however, that the underlying claims are inextricably interwoven and intertwined with various bankruptcy proceedings before the United States Bankruptcy Court.

The purported transfer of assets and claims by Friedlander, as Successor Trustee to himself is questionable.  Friedlander makes no mention of having secured approval of the United States Bankruptcy Trustee or of the Court to convey assets to himself during the course of a bankruptcy proceeding.

06-cv-1026 JAP/LFG, Order at 4, filed Dec. 12, 2006 (Doc. 9).  "Instead of complying with the Court's Order [to show cause], Friedlander filed a request that the proceeding, including the Order to Show Cause, be transferred to a District Court Judge. . . . Friedlander filed no response, as required, to the Order to Show Cause, nor did he request an extension of time . . ."  *Id.* Order Recommending Dismissal without Prejudice at 4, filed Jan. 4, 2007 (Doc. 14).  Judge Garcia again noted,

While Friedlander contends that he as Trustee assigned all of the Settlors' assets and claims to himself, he apparently did so without any authorization from the Bankruptcy Trustee or from the Bankruptcy Court itself.  His ability to unilaterally deprive the Trust or Settlors of property or assets when that property is involved in bankruptcy proceedings is highly questionable.

Friedlander's own description of the Trust and the reasons why it exists make it abundantly clear that, notwithstanding his claim of ownership, he is prosecuting this action on behalf of other entities and individuals. While an attorney is clearly authorized to do that, an attorney must comply with the rules of practice and procedure applicable to a federal district court. Friedlander has failed to do so.

*Id.* at 9-10.  Judge Garcia recommended dismissal of the suit.  Judge Garcia also denied Friedlander's motion to appear *pro hac vice* because Friedlander refused to associate with local counsel and Friedlander demonstrated unfamiliarity with the local rules and administrative rulings by violating them.  *See* Doc. 27.  After reviewing Friedlander's objections to dismissal, District Judge James Parker adopted Judge Garcia's recommendations and issued a final order dismissing the suit.  *See id.* Doc. 29, 31.  Friedlander did not appeal from those orders.

Friedlander also filed suit against Los Alamos National Bank ("LANB"), who is a plaintiff in the state-court proceedings and in an adversary proceeding in the bankruptcy court, in federal

13

court in California.  That court transferred the case to this District.  *See Friedlander v. Los Alamos Nat'l Bank*, 06-cv-399 WPJ/LCS (D.N.M.), Doc. 1.  District Judge William Johnson dismissed the case because Friedlander could not state a claim for relief on most claims and because the remaining claims were "duplicative of claims currently pending in the United States Bankruptcy Court."  *Id.* Order at 1, filed February 2, 2007 (Doc. 46).  Judge Johnson noted that, when trying to keep the case involving LANB, Potter and his LLCs, and Friedlander from being remanded to state court "Friedlander asserted that, because Potter 'was both a beneficiary and a claimed principle of the assets of the Trust, . . . the Trust itself constituted 'Property of the Estate.'"  *Id.* at 5.  Friedlander initially appealed from Judge Johnson's Order dismissing the case but later dismissed the appeal. *See id.* Doc. 55.  As discussed below, Judge McFeeley later held that Friedlander's filing of the suit in California and prosecuting it in New Mexico violated the automatic stay and held him in contempt.

Although Friedlander assigned the Trust and its assets to himself in November 2006 and has filed suits against Potter's and his LLC's creditors and former attorneys as Potter's and his LLC's assignee in the New Mexico federal district court, he did not file the Assignment in the main bankruptcy case or in the adversary cases until March 22, 2007.  *See* 05-14071 M, Doc. 330; 05-1149-m, Doc. 97; *and see* 06-1138-m, Doc. 40, filed April 18, 2007.  The parties in the bankruptcy proceedings moved to strike Friedlander's assignment to himself of the Trust assets.  But on April 16, 2007, Friedlander signed a document entitled "Martin S. Friedlander's Reassignment to Legal Defense and Maintenance Trust of California of All Assets Assigned to Said Trust and Assignment of Certain Assets by Said Trust to the Trustee Appointed as the Chapter 7 Trustee in the Bankruptcy Estate of Jeffrey W. Potter," and  filed this document in the main bankruptcy proceeding.  *See* 05-14071 M, Doc. 347.  Accordingly, when Judge McFeeley issued an order denying permission for

14

Friedlander to appear *pro hac vice* in an adversary proceeding, he noted that Friedlander

> filed the Notice of Assignment in an apparent attempt to avoid the ruling of the United States District Court for the District of New Mexico so that Martin S. Friedlander could appear *pro se,* on behalf of the California Trust.   Martin S. Friedlander confirmed that the intended effect of the subsequent filing of the Notice of Reassignment was to "undo" the Notice of Assignment.   These efforts support the Court's determination that Martin S. Friedlander should not be allowed to appear *pro hac vice* on behalf of the California Trust.   However, the Court does not find it necessary to strike the Notice of Assignment in light of the fact that the Notice of Reassignment returned the positions of the parties and res of the California Trust to the positions as they existed prior to the filing of the Notice of Assignment.

05-1149-m Order filed August 13, 2007  at 7-8 (Doc. 145); *Id.* Doc. 146 (Order denying motion to

appear *pro hac vice*).   Friedlander did not appeal from these orders.

In May 2007, Respondent Gonzales, the Chapter 7 Trustee, initiated a second adversary

proceeding contending that the initial transfer of Potter's assets to the Trust was fraudulent.   *See*

*Gonzales v. Potter*, 07-ap-1062-m (Bankr. D.N.M.), Doc. 1.  Because Friedlander had become the

successor Trustee of the Trust, Gonzales also named Friedlander as a defendant in the adversary

proceeding.   This adversary proceeding is one of the two adversary proceedings in which

Friedlander is a named defendant as the Trustee of the Trust that Friedlander alleges has personally

caused him damage in his mandamus petition.

In this adversary proceeding, Friedlander demanded a jury trial on the issue of fraudulent

conveyance from Potter and his LLCs to the Trust.  *See id.* Doc. 9.  This adversary proceeding is a

"core proceeding," over which the Bankruptcy Court has exclusive jurisdiction.  *See* 28 U.S.C. §

157(b)(2) ("Core proceedings include . . . (E) orders to turn over property of the estate; . . . and (H)

proceedings to determine, avoid, or recover fraudulent conveyances"); *Marshall v. Marshall*, 547

U.S. 293, 301 (2006) (noting that, if a proceeding is a "'core proceeding[]' under 28 U.S.C. § 157,

. . . the [bankruptcy] court ha[s] authority to enter a final judgment disposing of those claims").

In August 2007, in response to yet another motion from Friedlander to represent Potter, his LLCs, Danilovic and himself in both the bankruptcy court and in all the pending adversary proceedings, Judge McFeely entered an order stating that "Martin S. Friedlander may not enter his appearance in *pro hac vice* in this bankruptcy proceeding or any related adversary proceedings on behalf of the Debtor, or any party other than himself, individually."  05-14071 M, Order at 2, filed Aug. 12, 2007 (Doc.  451).  Friedlander did not appeal from this Order.

As mentioned, *supra*, Judge McFeeley also issued an order in the adversary proceeding involving LANB in which he imposed sanctions against Friedlander and held that Friedlander had violated the automatic stay by initiating the action against LANB in the California federal district court and continuing its prosecution in this Court before Judge Johnson dismissed it.  As Judge McFeeley explained:

> In this case, it is clear that Mr. Friedlander had actual knowledge of the automatic stay when he initiated the California Action. He has actively participated in the Debtor's bankruptcy case and related adversary proceedings.  He has asserted that the automatic stay protected the beneficial interest of the Debtor in the funds that are the subject of this adversary proceeding.  *See* Exhibit 6.  The California Action violated the automatic stay inasmuch as it represents a continued effort on the part of Mr. Friedlander to obtain certain funds that are the subject of this adversary proceeding, and in which this Court as already determined the bankruptcy estate holds a beneficial interest.  *See* Order on Motion for Determination of Whether Proceeding is Core or Non-Core, p. 4 (Docket # 78). . . .

> . . . . Clearly, the filing of the California Action was an attempt by Mr. Friedlander to circumvent the bankruptcy process. Such action is precisely the type of action the automatic stay was designed to prevent. The Court, therefore, finds that the filing of the California Action constituted a violation of the automatic stay for which sanctions for civil contempt under 11 U.S.C. § 105(a) may issue.

05-1149-m Order filed August 13, 2007 (Doc. 143).  Friedlander appealed from that ruling.

In February 2008, the Bankruptcy Court entered an order granting in part and denying in part the Chapter 7 Trustee's motion for default judgment against the Trust, against Danilovic as the

original Trustee, and against Friedlander in his capacity as the successor Trustee of the Trust in the adversary proceeding brought to determine whether Potter's transfer of his and his LLC's assets to the Trust is a fraudulent conveyance.  07-1062 M Order at 1 & 4, filed February 7, 2008 (Doc. 80). Judge McFeeley declined to enter a judgment against these three parties, however, until a determination had also been made against Potter, Friedlander individually, and Potter's two LLCs so that no potentially inconsistent judgments could be entered.  *See id.* at 2, 11.  But he expressly enjoined the Trust, Friedlander as Trustee, and Danilovic from "selling, transferring, using or spending any of the property transferred to the Trust pending resolution of this proceeding."  *Id.* at 13.

But Friedlander, appearing pro se, had already filed yet another suit in this Court against bankruptcy-court creditors and defendants in the adversary and state-court proceedings in November 2006, based on his contention that he now owns the Trust and all of its assets by virtue of assignment. *See Friedlander v. Cook*, 06cv1160 JB/DJS (D.N.M), Doc. 1. When the Chapter 7 Trustee warned Friedlander in September 2007 that he should inform this Court that he had reassigned the Trust assets to the Trust in April 2007, Friedlander filed a document entitled "Plaintiff's Notice of Revocation, Recission, and Cancellation of Reassignment to Trustee and Assignment to the Case Trustee, Yvette Gonzales." *Id.* Doc. 70.  In the Notice, Friedlander states that he, "as successor trustee, do hereby revoke, rescind, and cancel the assignments from the Trust to the case trustee and declare the same 'void ab initio.'"  *Id.*  He also states that he "as an individual assignee do hereby revoke, rescind, and cancel the reassignment from me to the Trust and declare the same 'void ab initio.'" *Id.*  He then declares that, as a result of his revocation, all of his claims in that suit remain his as the real-party-in-interest in the *Cook* litigation in this Court.  *See id.*

Friedlander filed the "Notice of Revocation" in the main bankruptcy proceeding, but he

17

characterizes the meaning of his revocation and original assignment much differently in his briefing in the bankruptcy proceedings.   For example, in Friedlander's "request for judicial notice" in the Bankruptcy Court, Friedlander recently represented that he is only an "assignee *for collection*" of the claims *belonging to the Trust* and that "[t]he *Cook* case assets belong to the California Trust or the bankruptcy Trustee."   05-14071 M, Doc. 693 at 1, 3, filed May 2, 2008 (emphasis added).

Friedlander's contradictory contentions regarding his position as the owner of the Trust in this Court and its bankruptcy unit; his contradictory statements regarding whether the Trust is or is not an asset of the bankruptcy estate in the two courts (*i.e.*, he argued in the Bankruptcy Court that the Trust *is* an asset of Potter's bankruptcy estate after having created the Trust but he contends in his petition at bar that Judge McFeeley and Gonzales must report Potter's bankruptcy attorneys to the Attorney General for making the same statements in the bankruptcy schedules); his accusations that Potter committed perjury by stating that he fraudulently conveyed all of his assets to the Trust, while claiming that he still represents Potter in all capacities except as bankruptcy debtor; and his conflicting roles as Potter's creditor in the bankruptcy proceedings and as his purported attorney cause the Court to have significant concerns about Friedlander's credibility and candor.   The Court is also concerned that Friedlander continues to attempt to achieve, by filing suits and petitions in this Court, what he has been enjoined from doing in the Bankruptcy Court and that Friedlander continues to attempt to interfere with, stay, delay, or terminate the bankruptcy proceedings by asking this Court to make rulings of an appellate nature that are improper in light of the ongoing bankruptcy proceedings and the automatic stay.

For example, Friedlander filed in the Bankrutpcy Court a "Motion to Dismiss Chapter 7 Bankruptcy of Debtor Jeffrey W. Potter Pursuant to Bankruptcy Code § 707 and Motion for Writ of Mandamus Commanding this Court to Order the U.S. Trustee and the Case Trustee to Refer the

Alleged Criminal Activities of Bregman, Davis and Pierce to the U.S. Attorney as Required by 18 USC § 3057" on September 23, 2007, demanding dismissal or an immediate stay of all the bankruptcy proceedings.  *See* 05-14071 M, Doc. 508.  He also filed a motion for a temporary restraining order seeking to enjoin the parties in the proceedings from filing or prosecuting any motions in the bankruptcy proceedings, to keep Judge McFeeley from hearing motions seeking sanctions against Friedlander, to stay the cases, to force Judge McFeeley's recusal, and to reinstate Friedlander's pro hac vice status in the bankruptcy court.  *See id.* Doc. 510.  These motions make the same allegations as Friedlander's petition for a writ of mandamus filed in this Court, including Friedlander's assertions that there is no legitimate bankruptcy proceeding; that Potter's former bankruptcy attorneys are responsible for filing false statements and schedules and committed malpractice; that all of Potter's assets were properly transferred to the Trust; and that the purpose of the bankruptcy filing was to cover up alleged attorney malpractice committed in state-court actions.

In denying the motion for injunctive relief, Judge McFeeley noted that

> [t]hese arguments are not new and have been raised several times by Mr. Friedlander, including at the final hearing on the Motion to Dismiss or Convert. They do not serve as sufficient grounds for an immediate stay of the bankruptcy proceeding and pending adversary proceedings. These alleged injustices occurred when the petition was filed, and while they may be ongoing, the Motion fails to explain how they will now, nearly two and one-half years later, result in immediate and irreparable harm if the entire bankruptcy proceeding and related adversary proceedings are not immediately stayed.

*Id.* Order filed September 28, 2007 at 4-5 (Doc. 521).  Although Judge McFeeley did not rule on the mandamus request at the time he denied Friedlander's motion for a TRO, he noted that "'[m]andamus 'is a drastic [remedy], to be invoked only in extraordinary situations,' and will issue only in those exceptional circumstances where the inferior court has acted wholly without jurisdiction or so clearly abused its discretion as to constitute a judicial usurpation of power,'" quoting *Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.)*, 911 F.2d 380, 387 (10th Cir. 1990).  *Id.* at 8 n.10.  About two

weeks after Friedlander received Judge McFeeley's ruling denying his request for a TRO and indicating that mandamus relief was not appropriate, Friedlander filed a Notice that he had petitioned this Court to issue the writ and that he had named the Bankruptcy Court as a respondent. *See* 05-14071 M, Doc. 549. Accordingly, Judge McFeeley did not issue a ruling on Friedlander's motion for writ of mandamus filed in the Bankruptcy Court.

Judge McFeeley did hold a hearing and rule, however, on Friedlander's and Potter's identical motions requesting the Bankruptcy Court "to Declare that None of the Assets Standing in the Name of Said Trust are Part of the Potter Chapter 7 Estate and/or 2) to Compel the Trustee to Abandon the Property of Potter and the Limited Liability Company Assets Transferred to the Estate by the California Trust or as the Case May Be, of the California Trust's Assets Standing in the Name of the California Trust (Bankruptcy Code § § 541 and 554(b)." *See id.*, Docs. 453, 467. Judge McFeeley denied the motions, noting that the issues raised there were already raised in the Chapter 7 Trustee's core adversary proceeding against Friedlander and Potter and would be decided in that proceeding. *See id.* Order filed Nov. 29, 2007 (Doc. 597).

On July 29, 2008, Judge McFeeley entered an order in Gonzales' adversary case against Potter, his LLCs, Friedlander, Danilovic, and the California Trust. Judge McFeeley held that "the terms of California Trust together with the admissions of Jeffery Potter contained in the Original Complaint and in his response to the [Chapter 7 Trustee's] Motion for Summary Judgment, establish the presence of a number of the relevant badges of fraud from which actual intent to defraud may be inferred under the [Uniform Fraudulent Transfer Act]," 07-01062m, Order at 14-15, filed July 29, 2008 (Doc. 100); that there was "sufficient evidence of actual fraud under a clear and convincing standard" such that Potter's transfer of all of his assets to the California Trust was fraudulent as a matter of law, *id.* at 18; that Gonzales had established her right to avoid the fraudulent transfer to the

20

Trust as a matter of law, *id.* at 21; that Friedlander did "not qualify as a good faith transferee without knowledge of the voidability of the transfer based on his role in the formation of the California Trust," *id.* at 27; and that the Chapter 7 "Trustee is entitled under 11 U.S.C. § 550 to recover from the California Trust all property transferred by Mr. Potter to the California Trust," *id.* at 28. Judge McFeeley entered a default judgment Summit Investment and Summit Valdes on July 29, 2008 on Gonzales' motion to void the transfer of their assets to the California Trust. *See* 07-01062m, Order filed July 29, 2008 (Doc. 103). Judge McFeeley also entered a default judgment against the California Trust, Danilovic, as original trustee of the California Trust, and Friedlander, as successor trustee of the California Trust on Gonzales' second amended complaint against them that same day. *See id.* Doc. 104. Friedlander and Potter have appealed from the Court's Orders. *See id.* Docs. 110, 116. Gonzales recently filed yet another adversary proceeding against Potter and Friedlander in the bankruptcy court, contending that they have refused to turn over to her Potter's assets that formerly had been held in the California Trust. *See* 08-01107 Doc. 1, filed September 4, 2008.

## ANALYSIS

In his petition for a writ of mandamus, Friedlander alleges:

> But for the abusive and fraudulent bankruptcy filed by attorneys Chris Pierce ("Pierce") and Sam Bregman ("Bregman") the Respondent bankruptcy court would not have "subject matter" jurisdiction to issue a summons in the two separate adversary proceedings, one filed by Los Alamos National Bank ("LANB") and the other by the Respondent Case Trustee ("Gonzales"), requiring Petitioner to expend thousands of dollars in time and expenses to defend himself in said adversary proceedings. Petitioner has been injured by the alleged criminal activities of attorneys Pierce and Bregman. . . . This District Court also has appellate jurisdiction over the Respondent Bankruptcy Court, with the power to mandate that the Respondents, and each of them, perform their duties under 18 USC § 3057, and require the Respondents and each of them to refer the "criminal activities" of Pierce and Bregman to the US Attorney for investigation. This District Court has jurisdiction to order the Respondent court to dismiss this fraudulent bankruptcy.

Friedlander's Amended Petition at 3. Friedlander has also filed a civil suit in this Court on October

21

4, 2007 against Pierce, his firm, and Bregman, asserting malicious abuse of process. *See Friedlander v. Davis & Pierce*, 07cv01016 JB/RHS (D.N.M.).

Friedlander does not cite a basis for his request for mandamus relief, but the Court assumes he is proceeding under 28 U.S.C. § 1361, which provides that "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."   As Judge McFeeley noted, mandamus relief is an extraordinary remedy that should only be granted if the petitioner demonstrates

> (1) that he has a clear right to relief, (2) that the respondent's duty to perform the act in question is plainly defined and peremptory, and (3) that he has no other adequate remedy.  Once the petitioner has established the prerequisites of mandamus relief, the court may exercise its discretion to grant the writ. . . .
>
> The court's jurisdiction over a mandamus petition depends on the character of the government's duty to the petitioner.  "The test for jurisdiction is whether mandamus would be an appropriate means of relief." *Carpet, Linoleum & Resilient Tile Layers v. Brown*, 656 F.2d 564, 567 (10th Cir. 1981).  If the duty is "ministerial, clearly defined and peremptory," mandamus is appropriate.  *Id.* at 566.

*Rios v. Ziglar*, 398 F.3d 1201, 1206 (10th Cir. 2005) (citations and parenthetical comments omitted).

Friedlander must also show that his right to the writ is "clear and indisputable." *Johnson v. Rogers* 917 F.2d 1283, 1285 (10th Cir. 1990).  "This . . . oft-cited ministerial-discretionary dichotomy which permeates the jurisprudence of mandamus is merely shorthand for the well-taken rule that, to the extent a statute vests discretion in a public official, his exercise of that discretion should not be controlled by the judiciary." *Carpet, Linoleum & Resilient Tile Layers*, 656 F.2d at 566 (footnote omitted)).

Friedlander bases his alleged "right" to mandamus relief on 18 U.S.C. § 3057, which provides:

> Any judge, receiver or trustee having reasonable grounds for believing that any violation under Chapter 9 of this title…has been committed …shall report to the

22

appropriate United States attorney all the Case  facts and circumstances of the case, the names of the witnesses, and the offense or offenses believed to have been committed.

But, as Gonzales points out, § 3057's mandate to report offenses allegedly committed in bankruptcy proceedings is explicitly conditioned upon the judge's or trustee's subjective belief that there are reasonable grounds on which to base an opinion that an offense has been committed.  The statute gives the judge or trustee discretion in drawing his or her subjective conclusions, thereby foreclosing the proposition that the judge's or trustee's duty is "ministerial, clearly defined and preemptory." *See Rios*, 398 F.3d at 1206.  The Court has not considered the substance of the affidavit the Chapter 7 Trustee filed with her motion to dismiss or for summary judgment in which she avers that she did not have "any reasonable grounds for believing that any violation" of the bankruptcy laws had been committed "by persons alleged to have committed crimes in [Friedlander's petition]."  *See* Doc. 8, Ex. A.  Because Judge McFeeley and the Chapter 7 Trustee have discretion in determining whether a crime has been committed that should be reported under § 3057, Friedlander cannot show that he has a "clear and undisputable right" to the relief he requests as a matter of law, and the petition must be dismissed for lack of jurisdiction.  *See Rios*, 398 F.3d at 1206.

Friedlander argues that he is entitled to discovery and a jury trial on Gonzales' "reasonable belief," see Doc. 9 at 2, citing a case involving a civil suit brought under the Federal Debt Collection Procedures Act and common-law unjust enrichment because the opinion in that case noted that the defendants "concede that there is a triable issue concerning whether and when [a defendant] had reasonable cause to believe that her husband was insolvent" in deciding whether a transfer was made in good faith.  *United States v. Goforth*, 465 F.3d 730, 731-32, 737 (6th Cir. 2006).  *Goforth* is irrelevant to the issue at bar, which is whether the statute upon which a mandamus petitioner relies for relief is ministerial and peremptory, thereby compelling compliance, or whether it grants

23

discretion for the federal respondent to act, thereby foreclosing mandamus relief.  When determining whether mandamus will lie, it does not matter whether the respondent's discretionary decision was well-founded or not; the fact that the respondent is statutorily given the discretion to make a subjective decision places "the exercise of that discretion" outside of the Court's jurisdiction to grant mandamus relief.  *See Carpet, Linoleum & Resilient Tile Layers*, 656 F.2d at 566.  Because Friedlander's petition on its face demonstrates that this Court has no jurisdiction to grant the mandamus relief he requests, it will be dismissed.

　　　　As demonstrated by Friedlander's additional requests for a stay and for dismissal of the bankruptcy proceedings based on his claims that those proceedings were initiated by Potter's perjuries  in listing the Trust and its assets as assets of Potter's bankruptcy estate, the central issues actually raised in this petition are whether Potter, and therefore his bankruptcy estate, has a beneficial interest in the Trust and its assets (which the Bankruptcy Court has found that he does), and whether Potter's transfer of his assets into the Trust was a fraudulent conveyance such that those assets may be recovered as property of the estate.  As described, *supra*, Friedlander has been told time and time again that the Bankruptcy Court has exclusive jurisdiction over Potter's assets, including any beneficial interest he has in the Trust and in his LLCs.  The fraudulent-conveyance issue has now been decided against Potter, his LLCs, the Trust, and Friedlander.  Friedlander has no right to continue to ask the District Court to interfere in, stay, delay, or dismiss the bankruptcy proceedings, or to act as an appellate court in this mandamus proceeding, or to make rulings about whether an asset listed in the bankruptcy schedules is or is not property of the estate[1].  Friedlander's petition

---

　　　　[1]  Under  11 U.S.C. § 541(a)(1), "The commencement of a case under section 301, 302, or 303 of this title creates an estate.  Such estate is comprised of all the following property, wherever located and by whomever held: (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of

appears to be nothing more than a poorly-disguised attempt to obtain rulings to "trump" the bankruptcy court without going through the proper appellate process.

Friedlander has also failed to establish entitlement to mandamus relief that would permit him admittance to our federal bar without following the procedures set out in our local rules because he has neither a clear right to relief nor no other adequate remedy.  As Judge Garcia noted in his very thorough explanation why Friedlander should not be allowed to appear *pro hac vice* without following our local rules, Friedlander has repeatedly "violated the local rules of procedure as well as an administrative order of this Court.  It is most likely that these violations would not have occurred had Friedlander associated with local counsel."  Order at 8, filed Feb. 20, 2007 in 06-cv-1026 (Doc. 27).  Friedlander could have appealed from this ruling to the Tenth Circuit, but he chose not to do so.  Instead, he has engaged in judge-shopping by filing another case and seeking the same relief in this mandamus petition.

The Court also rejects Friedlander's constitutional challenge to the local rules.   In support of his bald contention that he has a "right" to practice law in New Mexico without being licensed here or following the local rules, he states, "[t]here is absolutely no constitutionally accepted rational basis to required proposed admittees to be admitted to the Bar of this Federal District Court to be a member in good standing of the bar of New Mexico, and nothing that I have seen expresses such a rational basis."  Amended Petition at 19.   He speculates that "the only reason why this District insists that it members are members in good standing of the NM bar, is to exclude lawyers from all other states in the United States from practicing law in the US District Court of NM."  *Id.* at 20.  But as Judge

---

the case."  The estate also includes "[a]ny interest in property that the trustee recovers under section 329(b), 363(n), 543, 550, 553, or 723 of this title" and "[a]ny interest in property that the estate acquires after the commencement of the case."  11 U.S.C. § 541(a)(3), (7).

Garcia has already explained to Friedlander,

> The local rule at issue does not restrict out-of-district attorneys from practicing in this district.  Indeed, Friedlander may apply for federal bar membership and utilize the exception to D.N.M. LRCiv. 83.3 which provides that an out-of-district attorney may participate in an action if he/she applies to practice in accordance with D.N.M. LR-Civ. 83.2. This exception allows Mr. Friedlander to appear as counsel without the need to have local counsel, while his application for bar membership is pending.

> Friedlander, however, rejects any suggestion that he become a member of this federal bar or associate with local counsel. In effect, Friedlander seeks to avail himself of the benefits and privileges of practicing before this district court without incurring any of the obligations, including Bar membership, Bar dues, or even subjecting himself to any mechanism for Bar discipline if necessary.

Order at 8, filed Feb. 20, 2007 in 06-cv-1026 (Doc. 27).  The Court has already explained the rational basis for the local rules – that without them, out-of-state attorneys like Friedlander who have not studied to become familiar with our local rules and administrative orders often violate those rules and orders as Friedlander has repeatedly done.

In support of his argument that our local rule requiring those attorneys who are not licensed in New Mexico to associate with New Mexico licensed counsel violates the Equal Protection clause of the United States Constitution, Friedlander cites only cases striking down local requirements that create inherently suspect classifications, like alienage, race, or nationality.  *See* Amended Petition at 21-25.  Our local rules do not create inherently suspect classifications or single out an individual based upon personal characteristics.  As Friedlander himself points out, the Supreme Court has noted that the state has an "undoubted interest in maintaining high professional standards."  *Id.* at 21.

> [T]he States have a compelling interest in the practice of professions within their boundaries, and that as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions. . . . . The interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been 'officers of the courts.'

26

*Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792 (1975).  Thus, the Supreme Court has held that "[a]

State can require high standards of qualification, such as good moral character or proficiency in its

law, before it admits an applicant to the bar, but any qualification must have a rational connection

with the applicant's fitness or capacity to practice law."  *Schware v. Board of Bar Examiners*, 353

U.S. 232, 239 (1957); *see also Conn. v. Gabbert*, 526 U.S. 286, 291-92 (1999) (holding that the

liberty component of the Due Process Clause "includes some generalized due process right to choose

one's field of private employment, but a right which is nevertheless subject to reasonable government

regulation").  Our local rules clearly have a reasonable and rational connection to the capacity to

proficiently practice procedural law by requiring Friedlander to either have a New Mexico law

license or to associate with New Mexico counsel to ensure that proficiency.

Friedlander's contention that our local rule requiring association with a licensed New Mexico

attorney if the out-of-state lawyer is not licensed in New Mexico violates the Privileges and

Immunities Clause is equally unavailing.  The case he cites is easily distinguishable because our local

rules allow out-of-state lawyers to practice law here without being a resident of New Mexico.  The

Court concludes that our local rules are not unconstitutional.

**IT IS ORDERED** that Friedlander's Amended Petition for Mandamus (Doc. 3) is

DISMISSED with prejudice, and that Gonzales' Motion to Dismiss (Doc. 8) is DENIED as moot.

**DATED this 30th day of September, 2008.**

_____
**MARTHA VÁZQUEZ**
**UNITED STATES DISTRICT JUDGE**